# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WESLEY WILLIAMS,<br><br>        Plaintiff,<br><br>    v.<br><br>ALLISON, *et al.*,<br><br>        Defendants. | Case No. 1:19-cv-00371-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br>(ECF No. 31)<br><br>**FOURTEEN (14) DAY DEADLINE** |

**I.    Background**

Plaintiff John Wesley Williams ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

On July 21, 2021, the Court screened the original complaint and granted Plaintiff leave to file an amended complaint. (ECF No. 24.) Plaintiff's first amended complaint, filed October 28, 2021, is currently before the Court for screening. (ECF No. 31.)

**II.    Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

1

conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

### A. Allegations in Complaint

Plaintiff is currently incarcerated at R.J. Donovan Correctional Facility in San Diego, California.  The events at issue in the complaint took place while Plaintiff was housed at California State Prison – Corcoran ("CSPC").  Plaintiff names the following defendants (employed at CSPC unless otherwise identified): (1) Ralph Diaz, Secretary of California Department of Corrections and Rehabilitation ("CDCR"); (2) Kathleen Allison, Director of CDCR Division of Adult Institutions; (3) K. Tebrock, Deputy Director of CDCR Division of Adult Institutions; (4) D. Lorey, CDCR Associate Warden of Mental Health Compliance Team; (5) S. Pulley, CDCR Correctional Captain Facility Support; (6) S. Alfaro, CDCR Associate Director, Division of Adult Institutions; (7) L.C. Hence, Chief Deputy Warden; (8) Sexton, Warden; (9) Ken Clark, Warden; (10) M. Cota, Correctional Officer; (11) Hicks, Correctional Officer; and (12) Castro, Correctional Officer.  Plaintiff alleges as follows:

Throughout all times mentioned herein, Plaintiff was/is a participant in CDCR's Mental Health Delivery System ("MHDS") at the Correctional Clinical Case Management (CCCMS) and/or the Enhanced Out Patient ("EOP") level of care, as CCCMS is for prisoners who are mentally stable, able to care for themselves and function in a prison general population ("GP") setting, while EOP is a special program for prisoners who are gravely mentally disabled, unable to care for themselves in a prison GP setting.

In addition to a GP, CCCMS, and EOP, there is also a sensitive needs yard ("SNY") which is comprised of prisoners separated from GP prisoners due to protective custody issues such as sex offender, prison/street gang drop out, informant, also known as cat, snitch, etc.

In 2018, Defendants Diaz, Allison, Tebrock, Lorey, Pulley, Alfaro, Hence, Sexton, and Clark commenced the Non-Designated Program Facility ("NDPF") process of "merging yards" or "integrating yards" and forcing prisoners to house together regardless of if they were designated for SNY or GP.

Defendants historically separated prisoners designated as SNY from those it designated as GP for a reason; to protect prisoners who would face retaliation or potential harm.

When the yards "merge" or are "integrated" prisoners, including Plaintiff, have a higher likelihood of being harmed. This forced integration has heightened the potential victimization the protective custody SNY program was designed to protect against.

Prisoners, including Plaintiff, who are forced by this policy to house in unsafe places face life-threatening dangers. Defendants routinely ignore warnings that a particular housing assignment will put a prisoner, including Plaintiff, in specific danger. For those prisoners, including Plaintiff, who cite safety concerns and reject the NDPF policy and involuntary move on to "merged yards," the consequences include disciplinary rules violation reports ("RVR"), loss of program access, and solitary confinement, all of which impact parole eligibility and release.

Since the NDPF commenced, countless riots have shaken up prisons up and down the state, including CSPC where the deprivations are claimed herein, with dozens of prisoners hospitalized, and some left dead. When prisoners, including Plaintiff, refuse these unsafe and potentially deadly housing assignments, they are disciplined and often transferred to higher security prisons where they lose access to time outside the cell, and programs and work that entitle them to time credits. The NDPF Policy disrupts the program access Defendants claimed NDPF would increase.

In January 2018, Plaintiff got twisted and compelled into NDPF housing from CCCMS GP after Plaintiff refused to recant a witness statement provided to investigators concerning misuse of force imposed on a mobility impaired prisoner by CSPC correctional officers.

On January 14, 2018, Defendant Cota confronted Plaintiff on behalf of correctional officer coworkers and personal friends, in an effort to sway Plaintiff to recant the witness statement given, and when Plaintiff refused, Defendant Cota openly advertised Plaintiff as a sex offender, falsely accused Plaintiff of indecent exposure, then allowed GP prisoners in the housing unit who had become riled up by the open advertisement to take Plaintiff's personal property while Plaintiff was being processed into administrative segregation ("Ad Seg").

Defendant Cota's open advertisement further caused GP prisoners in the unit where Plaintiff had been safely residing a year or more, to suddenly yell and call Plaintiff "pervert" while threatening and vowing to "stab" and "kill" Plaintiff in response to Defendant's outrageous retaliatory act.

Plaintiff's mental health also decompensated requiring upgrade to EOP as a result of Defendant Cota's described act. Then, on January 20, 2018, Defendant Sexton came and held an Institutional Classification Committee ("ICC") to endorse Plaintiff into the CSPC Indecent Exposure (IEX) NDPF program based on Defendant Cota's false and retaliatory claim of IEX, and when Plaintiff told Defendant Sexton of the above facts, Defendant Sexton responded that Defendants Allison and Alfaro's NDPF Policy authorized Plaintiff's IEX NDPF placement. Defendant Sexton then turned to two subordinate correctional officers and said "you have full authority from me to use what force to have to get Williams to the IEX Program."

Intimidated, Plaintiff went on escort to be rehoused in the IEX NDPF specifically in CSPC 4B4R housing unit(s) designated by Defendants Diaz, Allison, Tebrock, Lorey, Pulley, and Alfaro. Defendants, despite well knowing that: (1) the CSPC 4B4R housing units were and had been condemned years prior due to unhabitable, and (2) prior to designated CSPC 4B4R as the IEX NDPF Defendants did nothing to bring the CSPC 4B4R housing units up to habitability and therefore were deliberately indifferent to the housing conditions.

Forcing Plaintiff to rehouse to the IEX NDPF based on Defendant Cota's outrageous retaliatory conduct imposed atypical and significant hardship in relation to the ordinary incidents of prison life because: a) the roof of the cell assigned to Plaintiff, and nearly every cell in the CSPC 4B4R IEX NDPF housing unit, leaked, causing mass water floods whenever it rained at

least 6–12 times every 7–10 days; b) while prisoners are said to be clustered inside the CSPC 4B4R IEX NDPF to prevent IEX against female staff and deter IEX behaviors, the IEX NDPF is not a treatment program, and many prisoners charged for IEX are allowed to IEX towards male correctional officers, cellmates, and each other, including Plaintiff, without being charged, reported, or disciplined; and c) whenever Plaintiff, or any prisoner housed in CSPC 4B4R IEX NDPF, is scheduled for medical/dental appointments at CSPC Treatment Center ("TC"), escorts to the TC are done to openly advertise as coming from 4B4R, as escorting correctional officers often yell "4B4R escort coming in," and although separated by holding cages, GP and non-CSPC 4B4R IEX prisoners also scheduled for TC appointments study and recall names and faces, update threats of harm to Plaintiff for the CSPC 4B4R IEX NDPF housing and label as "pervert" and sex offender, and reiterate vow to hurt and kill Plaintiff, but in the prison GP housing units outside of CSPC 4B4R there are no water floods from leaking ceilings and prison rules are enforced in GP to prevent IEX behavior.

Additionally, psychologist Dr. Grossman assigned to work in CSPC 4B4R IEX NDPF treating prisoner/patients ("PP") since the IEX NDPF commenced, kept track of PPs who were discharged from the IEX NDPF back to other CSPC non-IEX NDPF yards, and determined PPs were being attacked in high rate by non-IEX NDPF prisoners immediately after discharge from the CSPC 4B4R IEX NDPF.  Dr. Grossman reported his concerns repeatedly, however, Defendants continued to ignore clear warnings that particular CSPC housing assignments put prisoners, including Plaintiff, in specific danger.

About February 16, 2018, Plaintiff was found "not guilty" of the retaliatory IEX charge made by Defendant Cota, then on February 23, 2018, Plaintiff was rehoused to CSPC 3B01 NDPF EOP which is on a SNY facility where the rivalry between GP and SNY prisoners forced into NDPF participation was in full bloom.  In fact, Defendant's orders for Defendants Hence, Sexton, and Clark to force CSPC GP prisoners to rehouse to CSPC SNY facilities and CPSC SNY prisoners to rehouse to CSPC GP facilities had already imposed a surge of violence in all CSPC facilities.  Many CSPC prisoners on all facilities also openly defy and resist NDPF housing and participation and while some were disciplined with Ad Seg or solitary confinement, the mass

were permitted to remain in the prison population to carry on and out the violence challenged by this action.

Because Plaintiff's case factors were and are recognized as GP EOP NDPF participant, upon being rehoused to CSPC 3B01 in February 2018, Defendant Castro alerted SNY prisoners to Plaintiff's GP status, then placed a "green light" on Plaintiff.  A "green light" signifies to SNY, EOP SNY, and SNY security threat group ("STG") prisoners in the immediate housing unit and on the CSPC 3B01 facility that Plaintiff is approved for violent attacks whenever Defendant Castro is on duty, and twice in February 2018, while Defendant was on duty, two different prisoners randomly punched Plaintiff's head and face with closed fists while yelling "Fuck GPs" as Defendant Castro looked on without aid or intervention.

Then, a few days thereafter, Defendant Castro housed a EOP SNY prisoner with Plaintiff in CSPC 3B01-142 for 10–20 minutes to brawl while Defendant stood outside the cell door and watched.  Once tired from fighting Defendant Castro rehoused the EOP SNY prisoner, then told Plaintiff "you know how to handle yourself, just don't be a snitch or you'll have to fight me, and you will loose."

On about March 6, 2018, Plaintiff was transferred from CSPC to Richard J. Donovan Correctional Facility in San Diego, California ("RJDCF"), however, the outrageous retaliatory act imposed by Defendant Cota which forced Plaintiff into Defendants' IEX NDPF and EOP NDPF has caused Plaintiff harm, as GP prisoners throughout the state continue to regard or recall Plaintiff as "pervert and sex offender" which creates ongoing potential dangerous prison conditions.

Additionally, throughout the time Defendant Castro was assigned post in CSPC 3B01 EOP NDPF where the deprivations are claimed herein, and since commencement of Defendants' NDPF forced "merge yards," EOP psychologists, psychiatrists, and social workers made Defendants well aware of Defendant Castro's endless atrocious and wanton acts towards CSPC 3B01 EOP and EOP NDPF prisoners, all of which involved violent acts imposed or sanctioned, yet again Defendants ignored the dangerous harm being created by the NDPF merge and imposed by Defendant Castro.

6

The totality of events described coupled by the inhumane and unsafe conditions within Defendants' IEX NDPF and EOP NDPF further rise to constitutional violations, and create ongoing imminent danger.

Plaintiff seeks the following relief: a declaration that the acts and the omissions of Defendants violated Plaintiff's rights under the laws of the state of California, the United States, and the U.S. Constitution; punitive, compensatory, prospective, exemplary, and special damages, all according to proof; a jury trial; and all other relief this Court deems just and proper.

**B.  Discussion**

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 18 and 20.

**1.  Linkage Requirement**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Here, Plaintiff's complaint fails to link Defendant Hicks to any alleged constitutional violations, or any actions or inactions. Plaintiff fails to allege what Defendant Hicks did or did not do that violated his constitutional rights.

Further, Plaintiff's complaint fails to link Defendants Diaz, Allison, Tebrock, Lorey, Pulley, Alfaro, Hence, and Clark to any wrongful conduct committed, aside from implementing certain policies. As discussed below, Plaintiff cannot bring claims against these Defendants for implementing policies in their official capacities, and has therefore failed to link any of these

7

Defendants to specific acts or omissions that violated Plaintiff's rights.

### 2. Federal Rules of Civil Procedure 18 and 20

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement refers to similarity in the factual background of a claim. *Id.* at 1349. Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not raise different claims against different defendants in a single action. For instance, Plaintiff may not, in a single case, assert a claim related to retaliation for cooperating in an investigation against one defendant, assert a claim related to failure to protect against another defendant, while simultaneously asserting an Eighth Amendment claim regarding the leaking roofs at another facility. Unrelated claims involving multiple defendants belong in different suits. Plaintiff was warned that if he failed to comply with Rules 18 and 20, the Court would choose which properly joined claims to screen.

### 3. Eleventh Amendment – Official Capacity

It is not clear from the complaint whether Plaintiff is attempting to sue any of the defendants in their individual or official capacities, or both. To the extent Plaintiff is attempting to sue any defendants in their official capacities, the following standards apply.

"Suits against state officials in their official capacity . . . should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a suit against the state of California). An official-capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted). Such a suit "is not a suit against the official personally,

8

for the real party in interest is the entity." *Id.* at 166.

A claim for prospective injunctive relief against a state official in his or her official capacity is not barred by the Eleventh Amendment provided the official has authority to implement the requested relief. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 92 (1989). Moreover, "[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts of omissions constituting the alleged constitutional violation." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013); *see Rouser v. White*, 707 F. Supp. 2d 1055, 1066 (E.D. Cal. 2010) (proper defendant for injunctive relief in suit seeking implementation of CDCR policy is the CDCR Secretary in his official capacity). Instead, Plaintiff need only identify the law or policy challenged as a constitutional violation and name the official or officials within the entity who is or are alleged to have a "fairly direct" connection with the enforcement of that policy, *see Ex Parte Young*, 209 U.S. 123, 157 (1908), and can appropriately respond to injunctive relief. *Hartmann*, 707 F.3d at 1127 (citation omitted); *see also Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012).

In the complaint, Plaintiff seeks declaratory relief and monetary damages, but makes no request for any form of injunctive relief.

Plaintiff may not pursue his claims for monetary damages against the named defendants in their official capacities. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." *Aholelei v. Dep't. of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities, *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003), or suits for injunctive relief brought against state officials in their official capacities, *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 680 n.2 (9th Cir. 1991). Thus, Plaintiff may only proceed in this action for monetary damages against defendants in their individual capacities.

### 4. Supervisory Liability

To the extent that Plaintiff seeks to hold Defendants Diaz, Allison, Tebrock, Lorey, Pulley, Alfaro, Hence, Sexton, and Clark liable based solely upon their supervisory roles, Plaintiff

9

1 may not do so. Liability may not be imposed on supervisory personnel for the actions or
2 omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–
3 77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of
4 Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir.
5 2002).

6 Supervisors may be held liable only if they "participated in or directed the violations, or
7 knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045
8 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v.
9 Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any
10 personal participation if the official implemented "a policy so deficient that the policy itself is a
11 repudiation of constitutional rights and is the moving force of the constitutional violation."
12 *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations
13 marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).

14 In this case, Plaintiff alleges that Defendants Diaz, Allison, Tebrock, Lorey, Pulley,
15 Alfaro, Hence, Sexton, and Clark implemented two policies that led to violations of his
16 constitutional rights: (1) the Indecent Exposure Pilot Program (IEX Program) at CSPC; and
17 (2) the Non-Designated Program Facility ("NDPF") Program, which merged prisoner populations
18 formerly designated as GP and SNY. Plaintiff does not otherwise allege that any of these
19 defendants took specific actions that violated his constitutional rights.

20 However, Plaintiff has failed to allege facts demonstrating that either of the two policies,
21 separately or in combination, are themselves repudiations of Plaintiff's constitutional rights. As
22 discussed below, Plaintiff alleges violations of his rights when he was threatened with assault
23 after he was advertised as a sex offender, or assaulted or threatened with assault by SNY inmates
24 due to his status as a GP prisoner, but these threats and attacks resulted from actions taken by
25 specific defendants, not as a result of the policies themselves.

26 Plaintiff has also not alleged that the implemented IEX and NDPF Policies resulted in
27 violations of Plaintiff's constitutional rights. While Plaintiff was housed in IEX NDPF yards and
28 facilities, the harm he suffered was again a result of specific actions taken by individual

1 defendants, rather than the implementation of the policies themselves. Therefore, Plaintiff has
2 not sufficiently pled a cognizable claim of supervisory liability based on a constitutionally
3 deficient policy against Defendants Diaz, Allison, Tebrock, Lorey, Pulley, Alfaro, Hence, Sexton,
4 and Clark for creating or implementing the IEX and NDPF policies.

### 5. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114–15 (9th Cir. 2012); *Silva*, 658 at 1104; *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff alleges that in January 2018, he refused to recant a witness statement provided to investigators concerning misuse of force imposed on a mobility impaired prisoner by CSPC correctional officers. On January 14, 2018, Defendant Cota confronted Plaintiff in an effort to sway Plaintiff to recant the witness statement given, and when Plaintiff refused, Defendant Cota openly advertised Plaintiff as a sex offender, falsely accused Plaintiff of indecent exposure, then allowed GP prisoners in the housing unit who had become riled up by the open advertisement to take Plaintiff's personal property while Plaintiff was being processed into administrative segregation.

While courts have found that failure to cooperate with an investigation is not conduct protected by the First Amendment, *see, e.g., Garcia v. Covello*, Case No. ED CV 10-01127-JVS (VBK), 2015 WL 160673, at *9 (C.D. Cal. Jan. 12, 2015), it is less clear whether cooperating with an investigation is protected conduct. However, at least one court has found that cooperating as a witness in an investigation is protected conduct under the First Amendment. *See White v.*

11

*Riverra*, Case No. CV 13-08346 JFW (SS), 2014 WL 1571272, at *4 (C.D. Cal. April 17, 2014). Therefore, the Court assumes, without deciding, that such cooperation is protected conduct under the First Amendment, and at the pleading stage, Plaintiff states a claim for First Amendment retaliation against Defendant Cota. Plaintiff will be permitted to proceed on this claim and any claims properly joined to it pursuant to Federal Rules of Civil Procedure 18 and 20.

### 6. Due Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. The minimum procedural requirements that must be met in such proceedings are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Id.* at 563–71. As long as the five minimum *Wolff* requirements are met, due process has been satisfied. *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by *Sandin v. Connor*, 515 U.S. 472 (1995).

Although not entirely clear, it appears that Plaintiff alleges a violation of his due process rights when, after Defendant Sexton held a committee to endorse Plaintiff to CSPC IEX NDPF program based on Defendant Cota's false and retaliatory claim of IEX, Defendant Sexton responded that Defendants Allison and Alfaro's NDPF Policy authorized Plaintiff's IEX NDPF placement. Defendant Sexton then turned to two subordinate correctional officers and said "you

have full authority from me to use what force to have to get Williams to the IEX Program."

To the extent that Plaintiff asserts that there was a due process violation simply by being falsely accused of indecent exposure, he is not entitled to relief. *Hernandez*, 833 F.2d at 1319; *see also Hines v. Gomez*, 108 F.3d 265, 268–69 (9th Cir. 1997) (Ninth Circuit declined to extend the "some evidence" standard to a prison officer's initial accusation of a rule violation). Plaintiff does not assert that he was denied any other procedural protections relative to his appearance before the committee that endorsed him to the IEX Program.

To the extent that Plaintiff was denied any procedural protections at the committee, or related to Defendant Sexton's refusal to grant Plaintiff's request to challenge his endorsement, Plaintiff's allegations fail to state a due process claim because he was ultimately found not guilty. Plaintiff asserts that on February 16, 2018, he was found "not guilty" of the IEX charge made by Defendant Cota, and was rehoused on February 23, 2018. *E.g.*, *Brown v. Marshall*, No. CIV S-07-0956 MCE DAD P, 2012 WL 12906131, at * (E.D. Cal. Mar. 1, 2012) ("[P]laintiff's procedural due process claims related to either his first or second disciplinary proceedings have been rendered moot by the subsequent re-issuing and re-hearing of the rules violation charge against him"); *Shotwell*, 2012 WL 6569402, at *3 (finding no due process violation where the plaintiff's RVR was ordered reissued and reheard, plaintiff was found not guilty at the second hearing, and he was released from administrative segregation and not subjected to credit loss or any other form of punishment.); *see also Horne v. Coughlin*, 155 F.3d 26, 31, n.3 (2d Cir. 1998) (finding the plaintiff's due process claims with regard to his first hearing were rendered null after the findings and penalties were vacated and a new hearing ordered, and plaintiff suffered no loss of good time credits and no disciplinary record); *Morissette v. Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995) (finding no injury after a due process violation in the plaintiff's first disciplinary proceedings was subsequently corrected in the administrative appeal process and plaintiff's sentence was adjusted so that he served no additional time in segregation). Any due process violations alleged in the committee or thereafter were rendered moot by the subsequent not guilty finding. There is no indication that Plaintiff ultimately suffered any loss of credits, served additional time in segregation or maintained a disciplinary record for the alleged offense after the

not guilty finding. The Court therefore finds that Plaintiff has not stated a cognizable claim arising out of the initial committee action.

Insofar as Plaintiff alleges that his right to due process was violated because he was held in the IEX unit pending investigation and hearings on the charges against him, he fails to state a cognizable claim. *Resnick v. Hayes*, 213 F.3d 443, 448–49 (9th Cir. 2000) (finding plaintiff had no protected liberty interest in being free from confinement in the SHU pending his disciplinary hearing); *Shotwell v. Brandt*, No. C 10-5232 CW PR, 2012 WL 6569402, at *2 (N.D. Cal. Dec. 17, 2012). Further, any claim against Defendant Sexton for violation of Plaintiff's due process rights is improperly joined in violation of Federal Rules of Civil Procedure 18 and 20.

### 7.     Eighth Amendment – Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted). To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference . . ." *Labatad v. Corrs. Corp. of Amer.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).

Objectively, extreme deprivations are required to make out a conditions-of-confinement claim and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Although the Constitution "'does not mandate comfortable prisons,'"

*Wilson v. Seiter*, 501 U.S. 294, 298 (1991), "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time," *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989).

Plaintiff may be able to state a cognizable claim concerning the conditions of his cell while housed on the IEX unit relating to leaking roofs and flooding. However, as currently pled, Plaintiff's general, conclusory allegations are not sufficient to demonstrate that any named defendant was aware of the conditions of the roofs in the IEX unit or that they were deliberately indifferent to those conditions. Plaintiff's complaint fails to adequately link any defendant to this claim. Further, this claim is improperly joined in violation of Rules 18 and 20.

### 8. Eighth Amendment – Failure to Protect

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners or others because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. *Farmer*, 511 U.S. at 833; *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 834, 841; *Clem*, 566 F.3d at 1181; *Hearns*, 413 F.3d at 1040.

#### a. Defendant Cota

Plaintiff alleges that when Defendant Cota openly advertised Plaintiff as a sex offender and falsely accused Plaintiff of indecent exposure, it caused GP prisoners in the unit where Plaintiff had been safely residing for a year or more to suddenly yell and call Plaintiff "pervert" while threatening and vowing to "stab" and "kill" Plaintiff in response to Defendant Cota's advertisement. Plaintiff further alleges that GP prisoners at other institutions continue to regard or recall Plaintiff as "pervert and sex offender," as a result of Defendant Cota's actions.

At the pleading stage, Plaintiff has demonstrated that he faced "a substantial risk of harm to his health or his safety" as a result of Defendant Cota open advertisement of Plaintiff as a sex

offender and open accusation of indecent exposure, in the presence of other inmates. *See Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997) (analyzing due process claim and stating, "We can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender"); *Nailing v. Fosterer*, No. CIV S-09-2475-MCE (CMK), 2012 WL 1130655 at *8 (E.D. Cal. Mar. 2, 2012) (finding Eighth Amendment deliberate indifference claim sufficiently pled because "a reasonable jury could conclude that defendants were deliberately indifferent to the generally known risk sex offenders face in the prison general population"). As Plaintiff has also stated a cognizable claim of retaliation against Defendant Cota in this action, this claim is properly joined and may proceed.

b. Sexual Misconduct of Other Inmates

Plaintiff alleges that while housed on the IEX unit, he was subjected to indecent exposure from other inmates. The Court construes this as a sexual harassment claim under the Eighth Amendment. *See Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004) (citing *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000)). Although prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, *see Schwenk*, 204 F.3d at 1197, the Eighth Amendment's protections do not extend to all forms of sexual harassment. Allegations of sexual harassment that do not involve touching have routinely been found "not sufficiently serious" to sustain an Eighth Amendment claim. *Austin*, 367 F.3d at 1172 (upholding dismissal of claim premised on allegations that correctional officer unzipped his pants and exposed his penis to an inmate from inside control booth); *accord Somers v. Thurman*, 109 F.3d 614, 624 (9th Cir. 1997) ("[t]o hold that gawking, pointing, and joking violates the prohibition against cruel and unusual punishment would trivialize the objective component of the Eighth Amendment test and render it absurd."). Plaintiff therefore fails to state a claim for failure to protect from the sexual misconduct of other inmates. Further, this claim is improperly joined in violation of Rules 18 and 20.

c. Defendant Castro

Plaintiff alleges that in February 2018, Defendant Castro alerted SNY prisoners to Plaintiff's GP status, placing a "green light" on Plaintiff, signifying to SNY, EOP SNY, and SNY

16

STG prisoners in the housing unit and facility that Plaintiff was approved for violent attacks whenever Defendant Castro was on duty. Twice in February 2018, while Defendant was on duty, two different prisoners randomly punched Plaintiff's head and face with closed fists while yelling "Fuck GPs" as Defendant Castro looked on without aid or intervention. A few days thereafter, Defendant Castro housed an EOP SNY prisoner with Plaintiff for 10–20 minutes to brawl while Defendant Castro stood and watched. After he was tired of the fighting, Defendant Castro rehoused the EOP SNY prisoner.

At the pleading stage, Plaintiff has sufficiently alleged that Defendant Castro knew of a specific risk of harm to Plaintiff from an assault by other inmates due to his GP status, but nevertheless advertised Plaintiff's GP status to other inmates and housed him with a SNY prisoner, all leading to attacks on Plaintiff by other inmates. However, this claim is improperly joined in violation of Federal Rules of Civil Procedure 18 and 20. The claim will be dismissed without prejudice to refiling in a separate action.

### 9. Declaratory Relief

To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

### III. Conclusion and Recommendation

Based on the above, the Court finds that Plaintiff's complaint states cognizable claims against Defendant Cota for retaliation in violation of the First Amendment and failure to protect in violation of the Eighth Amendment. However, Plaintiff's complaint fails to state any other

cognizable claims for relief which are properly joined to his claims against Defendant Cota. Plaintiff's remaining claims will be dismissed without prejudice to refiling in a <u>new and separate action</u>.

Accordingly, the Clerk of the Court is HEREBY DIRECTED to randomly assign a District Judge to this action.

Furthermore, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's first amended complaint, filed October 28, 2021, (ECF No. 31), against Defendant Cota for retaliation in violation of the First Amendment and deliberate indifference in violation of the Eighth Amendment; and

2. All other claims and defendants be dismissed, without prejudice to refiling in a separate action, based on Plaintiff's failure to state cognizable claims for relief which are properly joined pursuant to Federal Rules of Civil Procedure 18 and 20.

\* \* \*

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 22, 2021**        /s/ *Barbara A. McAuliffe*
                               UNITED STATES MAGISTRATE JUDGE